UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBIN CHEONG,

    Plaintiff,

 v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. 3:17-CV-00070-DWC

ORDER VACATING DEFENDANT'S DECISION TO DENY BENEFITS

    Plaintiff Robin Cheong filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 7.

    After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to find Plaintiff's mental impairments severe at Step Two. The ALJ also failed to properly consider the medical opinion evidence of examining physicians Drs. Jennifer

Galbreath, Psy.D., and David Widlan, Ph.D. Had the ALJ considered all of Plaintiff's severe impairments at Step Two and properly evaluated the medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. Therefore, the ALJ's error is harmful and the Court orders the Commissioner's final decision be vacated in its entirety and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On August 28, 2013, Plaintiff filed an application for DIB, alleging disability as of February 2, 2012. *See* Dkt. 9, Administrative Record ("AR") 138. The application was denied upon initial administrative review and on reconsideration. AR 12. Plaintiff filed a written request for a hearing on April 29, 2014. *Id.* On October 2, 2014, Plaintiff filed an application for SSI. AR 152. That application was subsequently escalated to the hearing level. AR 12.

ALJ MJ Adams heard the matter on April 28, 2015. *See* AR 28–50. In a decision dated May 28, 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 12–23. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1–6; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) find Plaintiff's mental health impairments to be severe at Step Two; and (2) accommodate the limitations arising from Plaintiff's gout. *See* Dkt. 11, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.      Whether the ALJ erred by finding Plaintiff's mental health conditions did not constitute severe impairments at Step Two.**

Plaintiff asserts the ALJ erred by finding Plaintiff's mental impairments non-severe at Step Two of the sequential evaluation process. Dkt. 11, 13. Defendant asserts the ALJ properly considered Plaintiff's impairments and Plaintiff merely offers a different interpretation of the evidence. Dkt. 12.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[1]

Regarding mental impairments, the ALJ will consider four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's]

---

[1] The Court notes that on March 27, 2017, revisions to Social Security rules regarding the evaluation of medical evidence came into effect, updating several regulations that are pertinent to this matter. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). However, because the ALJ issued his decision in this case on May 28, 2015, the Court will apply the rules as they existed at that time.

ability to do basic work activities." *Id.* at (d)(1). An impairment(s) "can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

At Step Two, the ALJ discussed medical evidence regarding Plaintiff's mental health conditions. AR 16–17. The ALJ then found Plaintiff has mild limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. AR 17–18. The ALJ determined, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere[.]" AR 18.

First, the ALJ found Plaintiff has mild limitation in activities of daily living because Plaintiff did not report any mental limitations affecting self-care, and is able to clean, shop, cook, do laundry, and manage his finances. AR 17. The evidence, however, does not support the ALJ's finding. Plaintiff stated in a Social Security Administration Function Report ("SSA Function Report") that he is able to perform personal care (except during gout flares), clean his apartment, prepare meals, go to the food pantry or shop for needed items, drive a car, do laundry, and manage his money. AR 210–12. However, Plaintiff testified he is losing the ability to drive. AR 34. He testified other people drive his car for him because lights and sounds distract him, leading to driving mistakes and danger when he drives "with people in the car." AR 34. Plaintiff also reported that grocery shopping is difficult for him because of his Asperger's syndrome and because he is easily overwhelmed. AR 362. With regard to preparing and eating meals, Plaintiff

"open[s] the cans and eat[s them] just in [his] room," rather than eat with the rest of the residents at his transitional housing residence because "it's too many people." AR 45.

During a psychological evaluation with Dr. Widlan, Plaintiff reported that he sleeps fifteen hours per day. AR 315. At a checkup with Dr. Allison Fitzgerald, M.D., Plaintiff's treating physician, he reported sleeping twenty hours per day. AR 468. Plaintiff testified to difficulty watching television because he must "rewind to kind of see what [he] missed." AR 43. The evidence shows Plaintiff's activities of daily living are more limited than described by the ALJ. Therefore, the Court finds the ALJ's conclusion that Plaintiff has mild limitation in activities of daily living is not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (finding an ALJ must not "cherry-pick" certain observations without considering their context).

Second, the ALJ determined Plaintiff has mild limitation in social functioning. Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. The ALJ determined Plaintiff has mild limitation in social functioning because he interacts with others on an Internet forum, gets along with authority figures, is described as cooperative in medical evidence, and his treatment goals include making new friends at "AA" and "NA" meetings, and, "hopefully while [Plaintiff is] volunteering." AR 18. Moreover, the ALJ found Plaintiff plans to continue studying Jainism and attending temple in Bothell, and in February 2015, reported being more active socially and developing a close relationship with a woman that he met at CD (chemical dependency) group. AR 18.

The evidence, however, does not support the ALJ's finding. Plaintiff stated in a SSA Function Report that he gets along with family and authority figures, and, although he is a

"homebound kind of person," he interacts with others on Internet forums every day. AR 213–15. In a recovery plan review with Community Psychiatric Clinic ("CPC"), Plaintiff stated that he has "one good friend," plans to continue studying Jainism, and hopes to gain more friends through "AA," "NA," and volunteering. AR 339–42. However, in a CPC crisis plan, Plaintiff reported that he does not have the energy or motivation to do anything, and mostly stays at home. AR 299. CPC progress notes include Plaintiff's statement that he has a "hard time" making friends and does not trust people. AR 313.

Further, while Plaintiff was cooperative during psychological evaluations with Drs. Widlan and Galbreath, he exhibited other signs of limitation in social functioning. AR 318, 257. Dr. Galbreath reported that Plaintiff's mood was depressed and anxious, affect was flat, eye contact was "fleeting," and Plaintiff stared at a desk when he talked. AR 257. Dr. Fitzgerald described Plaintiff at one appointment as irritable, agitated, and having "flight of ideas" and "pressured speech." AR 273. During the evaluation with Dr. Galbreath, Plaintiff was appropriately dressed and groomed. AR 257. However, in an appointment with Dr. Fitzgerald, Plaintiff had poor hygiene and was disorganized. AR 283.

Moreover, the evidence includes three Global Assessment of Functioning ("GAF") scores received by Plaintiff that show more than mild limitations in social functioning. *See* AR 256, 304, 317. However, the ALJ properly discounted these scores because he gave specific and legitimate reasons as to why he found the GAF evidence unreliable. The scores are not always accompanied by supporting explanations—the clinician and Dr. Galbreath gave specific reasons behind their GAF ratings, but Dr. Widlan did not. *See* AR 304, 255–56, 317. Moreover, the ALJ found that they relied on Plaintiff's subjective complaints, and the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* dropped the GAF scale in part because of its lack of

clarity and questionable psychometrics. AR 19. In addition, all three opinions indicated the GAF score was partially based on psychosocial factors, such as unemployment and problems related to housing. AR 304, 256, 316. Accordingly, the ALJ's decision to give little weight to Plaintiff's GAF scores is valid.

However, the ALJ did not discuss evidence that shows Plaintiff's social functioning is more limited than described by the ALJ. Therefore, the Court cannot conclude the ALJ's finding that Plaintiff has only mild limitation in social functioning is supported by substantial evidence. *See Hutchinson v. Colvin*, 2016 WL 6871887, *4 (W.D. Wash. Nov. 22, 2016) (noting that the ALJ's treatment of the evidence in the record at Step Two suggested improper "cherry-picking" to support the ALJ's decision "while failing to address aspects of the record supporting a finding of severe limitations.").

Third, the ALJ determined Plaintiff has mild limitation in the area of concentration, persistence, or pace. AR 18. The ALJ relied on evidence showing Plaintiff enjoys surfing the internet and writing music and fiction, and reported releasing an album of music and publishing a book. AR 18. The ALJ found the only change in these activities described by Plaintiff (in a SSA Function Report) was a physical difficulty of standing to sell books. AR 18. The ALJ also found Plaintiff reported that he can pay attention "all the time" and can follow written and spoken instructions. AR 18. The ALJ also relied on evidence showing Plaintiff's mental status examination findings (in terms of cognitive abilities) "have generally been within normal limits" with some impairments in remote memory. AR 18. Moreover, the ALJ found Plaintiff "indicat[ed] a capacity to keep to a schedule" by reporting that he is attending "NA" meetings daily and "AA" meetings weekly or biweekly. AR 18.

The ALJ however, did not discuss evidence showing Plaintiff's mental impairments caused limitations in this functional area. *See* AR 18. The record shows Plaintiff sometimes has a normal memory and ability to concentrate. *See* AR 318 (Dr. Widlan rated Plaintiff's concentration ability as "normal" during the evaluation because he was able to count backward from 100 in intervals of three and seven). But the evidence also shows depression and anxiety lower his ability to concentrate. For example, Dr. Galbreath's evaluation states that in the concentration portion of the mental status examination, Plaintiff was able to name two out of an expected three animals that begin with the letter "g." AR 258. Dr. Fitzgerald's treatment notes indicate Plaintiff exhibits poor attention span and concentration. *See* AR 264. Moreover, while the ALJ states Plaintiff's cognitive abilities have generally been normal in mental status examinations, except for remote memory (AR 18), Plaintiff's judgment or insight or both were impaired in two mental status examinations. AR 346, 348.

The ALJ failed to discuss the foregoing evidence when finding Plaintiff had mild limitation in this area. Therefore, the Court cannot conclude the ALJ properly considered all the evidence when finding Plaintiff had mild limitations in concentration, persistence, or pace. *See Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995). Therefore, the ALJ's third finding is not supported by substantial evidence.

Fourth, the ALJ found Plaintiff experienced no episodes of decompensation which have been of extended duration. AR 18. Plaintiff has not shown, nor does the Court find, that he suffered from episodes of decompensation of an extended duration. *See* Dkt. 11. Therefore, the ALJ's fourth finding is supported by substantial evidence.

For the above stated reasons, the ALJ failed to consider the entire record when finding Plaintiff did not have a severe mental impairment at Step Two.

Additionally, the ALJ failed to discuss significant, probative evidence without explanation: the evidence related to Plaintiff's bipolar 1 disorder diagnosis. The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores*, 49 F.3d at 570–71 (*quoting Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id.* at 571.

Dr. Fitzgerald's treatment notes diagnose Plaintiff with bipolar 1 disorder and describe associated chronic problems throughout the record. *See generally* AR 271, 471. For example, in April 2013, Dr. Fitzgerald stated that the bipolar 1 disorder was "uncontrolled," was associated with "mania," and caused Plaintiff to fail to take his medications regularly. AR 271. In August 2013, Dr. Fitzgerald stated that Plaintiff exhibited thoughts of grandiosity and pressured speech, the bipolar I disorder was uncontrolled, persistent in frequency, and resulted in Plaintiff missing appointments. AR 280–81. In October 2013, Dr. Fitzgerald stated that the bipolar 1 disorder was uncontrolled and resulted in anhedonia, poor hygiene, and disorganization. AR 283.

Although the ALJ lists portions of evidence of Plaintiff's bipolar 1 disorder diagnosis (*see* AR 16), he fails to discuss it in the Step Two analysis and whether it caused functional limitations. It is of significant, probative value because it regards the severity of Plaintiff's mental impairment. The ALJ may have had reasons for disregarding this evidence, but the Court cannot know because the ALJ did not state any reasons for doing so. Therefore, on remand, the ALJ is directed to discuss the bipolar 1 disorder evidence in further detail.

Accordingly, the Court finds that the ALJ erred. The record shows that Plaintiff was diagnosed with depression, anxiety disorder, post-traumatic stress disorder, Asperger's syndrome, and bipolar 1 disorder. *See, e.g.*, AR 255, 271, 297. These conditions caused

functional limitations. *See, e.g.*, AR 317 (severe limitations in Plaintiff's ability to complete a normal work day and work week without interruptions from psychologically-based symptoms due to depression and anxiety); AR 334–36 (from March until May 2014, Plaintiff's CPC progress notes report that he felt depressed, did not want to "leave the house," had difficulty making friends, and remained in bed from 9:00 p.m. until 2:00 or 3:00 p.m. every day due to "PTSD"). Therefore, the Court finds that Plaintiff's mental health conditions are severe impairments.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111)). If the ALJ accounts for all of Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ failed to discuss Plaintiff's mental limitations and the opinions of several doctors in assessing the RFC, making the Step Two error harmful. The ALJ mentioned depression, anxiety, post-traumatic stress disorder, and Asperger's syndrome in subsequent portions of his decision, but did not discuss the limitations caused by these impairments or include any mental limitations in the RFC. *See* AR 20–21. The ALJ also mentioned the medical opinions of examining physicians Drs. Galbreath and Widlan, and non-examining physicians

Drs. Bruce Eather, Ph.D. and Carla van Dam, Ph.D. at Step Two, but did not discuss the opinions when determining the RFC.[2] Because the ALJ did not discuss the mental impairments and medical opinions in assessing the RFC, the Court cannot conclude the ALJ properly considered Plaintiff's severe mental impairments throughout the remaining steps of the sequential evaluation process.

A review of the record shows the RFC assessment may have changed had the ALJ properly considered Plaintiff's mental impairments and the medical opinions at Step Two. For example, the ALJ gave little weight to Plaintiff's Asperger's syndrome diagnosis and subjective mental impairment symptom testimony. *See* AR 20. Had the ALJ properly considered Plaintiff's Asperger's syndrome diagnosis and mental impairments at Step Two, Plaintiff's subjective testimony may have been given additional weight and additional limitations may have been included in the RFC assessment and hypothetical question posed to the vocational expert, Leta Berkshire. As the ALJ's failure to properly consider Plaintiff's mental impairments severe at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision, it is not harmless.

The ALJ's error at Step Two requires remand to the Commissioner for proper consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in the administrative process incorporating Plaintiff's mental impairments and the work limitations possibly caused by these severe impairments. As the ALJ's error at Step Two impacts all aspects

---

[2] As further discussed in Section II *infra*, even if the ALJ's consideration of the medical opinion evidence of Drs. Galbreath, Widlan, Eather, and van Dam at Step Two was sufficient to show he considered Plaintiff's severe impairments throughout the remaining steps of the sequential evaluation process, he failed to properly consider the medical opinions and therefore the error is harmful.

of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process.[3]

## II. Whether the ALJ properly weighed the medical opinion evidence.

Plaintiff contends the ALJ failed to properly consider the opinions of examining physicians Drs. Galbreath and Widlan. Dkt. 11. Plaintiff also contends the ALJ erred by giving too much weight to the opinions of non-examining sources, Drs. Eather and van Dam. *Id.* While the ALJ's error at Step Two requires the ALJ to re-evaluate this entire matter on remand, the Court specifically directs the ALJ to reconsider the opinions of Drs. Galbreath, Widlan, Eather, and van Dam because the ALJ provided conclusory reasons for giving little weight to Drs. Galbreath and Widlan's opinions.

### A. Dr. Galbreath

In October of 2013, Dr. Galbreath completed a psychological evaluation regarding Plaintiff's functional abilities. *See* AR 254–58. The ALJ discussed the findings of Dr. Galbreath and with the exception of an assessment of mild limitations in work-related activities, gave the opinion little weight. AR 18–19. The ALJ concluded Dr. Galbreath's accompanying examination report does not reflect moderate to marked limitations for the following reasons:

> (1) [T]he claimant reported that he is a musician and that he played live shows when he was in a band. (2) He published a book in July 2013, but could not afford to do the necessary marketing to sell his book. (3) On mental status examination, the claimant was cooperative, and readily answered questions. (4) He was able to provide a clear history. (5) His mood was depressed and anxious and his affect was flat. However, his thought process and content were within normal limits, he was oriented, his perception was intact, and his fund of knowledge, concentration, abstract thought and insight and judgment were within normal limits. (6) He remembered 1 of 3 words after a brief delay, but digit span forward and backward were [sic] intact.

---

[3] While the Court finds the mental impairments are severe, the Court makes no determination on how these severe impairments will impact the ALJ's evaluation of the remaining sequential evaluation process, including Plaintiff's credibility, the medical opinion evidence, and Plaintiff's RFC.

AR 18–19 (numbering added).

When a treating or examining physician's opinion is contradicted, the ALJ can reject the opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, even though the ALJ listed six reasons for giving Dr. Galbreath's opinion little weight, he did not state his interpretation of the evidence, or make findings—the ALJ did not explain how Dr. Galbreath's opinion of moderate to marked limitations is contradicted by the findings listed by the ALJ in the decision. Instead, the ALJ summarized several facts that he relied upon to conclude the examination report does not reflect moderate to marked limitation. AR 18–19. The ALJ also included conflicting clinical evidence, namely Plaintiff's flat affect, depressed and anxious mood, and impaired memory. AR 19. However, this summary is very limited. For example, the ALJ cited one section of the six-section clinical interview (activities of daily living), noting Plaintiff previously published a book, but failing to discuss Plaintiff's statement that he "writes when he is not feeling depressed, but 'right now [he is] looking homelessness in the face.'" AR 255. The ALJ cited to Plaintiff's cooperative behavior in the attitude and behavior portion of the mental status examination, but did not mention Plaintiff's "fleeting" eye contact, which was listed in the same portion. AR 19.

Without more, the ALJ's conclusory statements rejecting Dr. Galbreath's opinion failed to meet the level of specificity required to reject a physician's opinion and are insufficient for

this Court to determine if the ALJ properly considered the evidence. Therefore, the ALJ erred. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions[.]").

Had the ALJ properly considered the opinion of Dr. Galbreath, the RFC and hypothetical question may have included additional mental limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

B.  Dr. Widlan

In May of 2014, Dr. Widlan completed a psychological evaluation regarding Plaintiff's functional abilities. *See* AR 315–26. The ALJ discussed the findings of Dr. Widlan and gave the opinion little weight because:

> (1) The claimant's examination findings and social functioning on a longitudinal basis are at odds with the assessed moderate to marked limitations. (2) Dr. Widlan had no records to review, hence he was unaware of the longitudinal picture [and] (3) Dr. Widlan indicated that the claimant had normal thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment.

AR 19 (numbering added).

As discussed *supra*, when an examining physician's opinion is contradicted, the ALJ may reject the opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citation omitted). The ALJ can accomplish this

through "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted).

The ALJ provided three conclusory reasons for giving little weight to the opinion of Dr. Widlan. *See* AR 19. First, the ALJ stated Dr. Widlan's findings of moderate to marked limitations in social functioning are at odds with Plaintiff's social functioning on a longitudinal basis. AR 19. However, he failed to expound any facts illustrating Plaintiff's social functioning on a longitudinal basis, how Dr. Widlan's opinion was at odds with those facts, or why such disagreement would render Dr. Widlan's opinion less reliable. Second, the ALJ stated that Dr. Widlan was unaware of the "longitudinal picture" because Dr. Widlan did not have access to claimant's records. AR 19. But the ALJ failed to explain how Dr. Widlan's lack of a longitudinal picture renders his opinion less reliable. Without more, the ALJ has failed to meet the level of specificity required to reject a physician's opinion.

Third, the ALJ listed mental status examination categories of Dr. Widlan's report that indicated Plaintiff was "normal," but failed to discuss conflicting mental status examination results in Dr. Widlan's report (*e.g.*, Plaintiff's "restricted affect" or "depress[ed]" mood). *See* AR 19; *see also* AR 318. The ALJ also failed to explain why the facts that he relied upon are inconsistent with Dr. Widlan's findings of moderate to marked limitations in social functioning. The vague, conclusory statements rejecting the opinion of Dr. Widlan do not reach the level of specificity necessary to justify rejecting the opinion and are insufficient for this Court to determine if the ALJ properly considered the evidence. Therefore, the ALJ erred. *See McAllister*, 888 F.2d at 602.

Had the ALJ properly considered the opinion of Dr. Widlan, the RFC and hypothetical question may have included additional mental limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

   C.   <u>Non-examining Physicians</u>

Plaintiff argues the ALJ erred by giving too much weight to the opinion of non-examining physicians. Dkt. 11, pp. 7–8. Specifically, Plaintiff argues Drs. Eather and van Dam's opinions cannot constitute substantial evidence because they rendered their opinions without examining several important evidentiary documents and they offered vague explanations for why they disagreed with Dr. Galbreath's opinion. *Id.*

A non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a non[-]examining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). As the ALJ did not provide specific and legitimate reasons for discounting the opinions of Drs. Galbreath and Widlan, he erred when he discounted these opinions in favor of the opinions of two non-examining doctors. On remand, the ALJ should re-evaluate all the medical opinion evidence, to include Drs. Eather and van Dam's opinions.

**III.   Whether the ALJ erred by failing to provide clear and convincing reasons supported by the record to discount Plaintiff's subjective testimony.**

Plaintiff contends the ALJ failed to give clear and convincing reasons for discounting his subjective symptom testimony. Dkt. 11, pp. 12–14. The Court concludes the ALJ committed harmful error at Step Two and in assessing the medical opinion evidence. *See* Sections I & II,

*supra*. Because the ALJ's reconsideration of Step Two and the medical opinion evidence may impact his assessment of Plaintiff's subjective testimony, the ALJ must reconsider Plaintiff's subjective testimony on remand.[4]

The Court also notes that on March 16, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). The term "credibility" will no longer be used. *Id*. Further, symptom evaluation is no longer an examination of a claimant's character; "adjudicators will not assess an individual's overall character or truthfulness." *Id*. at *10. The ALJ's decision, dated May 28, 2015, was issued approximately one year before SSR 16-3p became effective. Therefore, the ALJ did not err by failing to apply SSR 16-3p. However, portions of his decision finding Plaintiff not entirely credible do not comply with the new SSR. For example, the ALJ found Plaintiff not entirely credible, in part, because he was inconsistent in his reports of abstinence from drug use. *See* AR 21. This is an assessment of Plaintiff's overall truthfulness on a matter unrelated to his disability and is improper under SSR 16-3p. On remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

**IV.     Whether the ALJ erred by failing to further develop the record.**

Plaintiff contends the ALJ erred by failing to properly consider the limitations caused by his mental impairments. Dkt. 11, pp. 10–11. Specifically, Plaintiff states the ALJ erred by failing to further develop the record with regard to Plaintiff's reported Asperger's syndrome. *Id.*

---

[4] Plaintiff argues the ALJ lacked clear and convincing reasons to discount his credibility because the ALJ failed to account for limitations arising from his gout flares. *See* Dkt. 11 at 12. As discussed *supra*, the Court is ordering the ALJ to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process, which will include re-evaluating Plaintiff's subjective testimony. Therefore, the Court need not examine the merit of Plaintiff's gout flare credibility argument at this time, and will not make any determination on whether or not the ALJ failed to account for limitations arising from Plaintiff's gout flares.

1  "An ALJ's duty to develop the record further is triggered only when there is ambiguous
2  evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*
3  *v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Where the record, taken as a whole, is
4  adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not
5  implicated. *See Baghoomian v. Astrue*, 319 F. App'x 563, 566 (9th Cir. 2009).

Here, the ALJ stated Plaintiff does not have a medically determinable impairment of Asperger's syndrome for the following reasons:

> (1) Dr. Galbreath based the diagnosis solely on the claimant's report [and] did not have records to review. (2) The claimant reported to SSA that 'Dr.' Cary Terra diagnosed Asperger's in May 2012. Although records from that source are not on file, I note that Cary Terra, MA, LMFT, is not an acceptable medical source for purposes of diagnosing medically determinable impairments. (3) Furthermore, Dr. Gustafson, who has treated the claimant since March 2014, did not diagnose Asperger's syndrome.

AR 17 (numbering added).

Plaintiff has shown the record was ambiguous and inadequate when the ALJ evaluated the alleged Asperger's syndrome impairment, thus the ALJ committed error. Dr. Galbreath's evaluation states Plaintiff reported that his Asperger's syndrome was "diagnosed in 2012 by a psychologist." AR 254. In the disability report cited by the ALJ, Plaintiff reported that a "Cary Terra DR" of "Terra Therapy" treated or evaluated him for Asperger's syndrome in May 2012. AR 194. Besides these statements, however, the record is devoid of evidence of an Asperger's syndrome diagnosis or treatment from an acceptable medical source. Therefore, the record, taken as a whole, is inadequate to evaluate Plaintiff's alleged impairment.

However, the ALJ did not inquire further for adequate evidence to evaluate Plaintiff's alleged impairment. Instead, the ALJ considered the record as it stood, determined, without any records, that a "Cary Terra, MA, LMFT" is not an acceptable medical source, and concluded

Plaintiff does not have a medically determinable impairment of Asperger's syndrome. Therefore, the ALJ erred by evaluating Plaintiff's alleged Asperger's syndrome diagnosis and treatment without performing his duty to further develop the record.

In order to properly consider all limitations caused by Plaintiff's Asperger's syndrome, the Court directs the Commissioner to allow Plaintiff to submit additional evidence regarding his functional limitations on remand.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds that the ALJ improperly concluded that Plaintiff was not disabled. Accordingly, the Court orders the Commissioner's final decision to deny benefits be vacated in its entirety and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing in accordance with the findings contained herein.

Dated this 7th day of July, 2017.

David W. Christel
United States Magistrate Judge